UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY LYNNE LAMBERT,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | ) No. EDCV 14-2631 FFM<br>)<br>) **MEMORANDUM OPINION**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I. INTRODUCTION

Plaintiff Tracy Lynne Lambert ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration denying her applications for Disability Insurance Benefits and Supplement Security Income. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 13). Pursuant to the January 7, 2015, Case Management Order, (Dkt. No. 8), on October 13, 2015, the parties filed a Joint Stipulation ("Joint Stip.") detailing each party's arguments and authorities, (Dkt. No. 19). The Court has reviewed the Joint Stipulation and the administrative

record ("A.R."), filed by defendant on August 10, 2015, (Dkt. No. 17). For the reasons stated below, the decision of the Commissioner is affirmed.

## II.   PRIOR PROCEEDINGS

On November 8, 2011, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income based on alleged physical and mental impairments and asserting disability since August 20, 2011. (A.R. 166–190). Plaintiff alleged the following disabling impairments: para-aortic lymphadenopathy, sigmoid colon thickening, hiatal hernia, migraine headaches, asthma, burning sensation in left foot. (A.R. 185). The Administrative Law Judge ("ALJ"), James P. Nguyen, examined the records and heard testimony from Plaintiff and a vocational expert ("VE"), on March 7, 2013. (A.R. at 34–57).

At the hearing, Plaintiff testified that the primary reason she cannot work is her "intestinal disease." (A.R. 41). According to Plaintiff, she suffers from ulcerative colitis which causes diarrhea and forces her to use the bathroom every ten minutes, daily. (*Id.*) Plaintiff claimed that such episodes last for around two months at a time during the summer. (A.R. 44). Plaintiff further alleged that, during the winter, the symptoms occur about once a month and are less severe, (A.R. 42), though she also later alleged that the episodes last anywhere from one week to two months, (A.R. 43). Plaintiff averred that she has suffered from ulcerative colitis since August 20, 2011. (A.R. 41). Plaintiff's admitted daily activities include walking the dogs, doing her dishes, cleaning, and using the computer. (A.R. 47). Additionally, Plaintiff alleged that she suffers from migraines lasting several days which she treats with over-the-counter Excedrin. (A.R. 44–45). Finally, Plaintiff testified that a 2007 injury to her left foot continues to cause pain. (A.R. 46–47)

The ALJ asked the VE, David Rinehart, what work Plaintiff could perform if she were limited to: light work; occasional climbing ramps and stairs; never climbing

ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; occasional use of the left lower extremity for pushing and pulling in the operation of foot controls; and avoiding work around heavy machinery, heights, uneven terrain, and concentrated exposure to extreme cold, fumes, odors, dust, gases, and poor ventilation. (A.R. 54). Based on this hypothetical, the VE testified that Plaintiff would be able to work as a retail salesperson, garment sorter, or an office helper. (A.R. 55). The VE further testified that no work would be available to Plaintiff if she required "unscheduled bathroom breaks of varying duration and frequency during an eight-hour day." (*Id.*)

On May 3, 2013, the ALJ denied Plaintiff benefits in a written decision. (A.R. 17–28). The ALJ determined that Plaintiff suffered from numerous severe impairments, including ulcerative colitis, Crohn's disease, migraine headaches, and asthma. However, the ALJ found that none of Plaintiff's impairments met or equaled a listing found in 20 C.F.R. § 404, subpt. P, app. 1. (A.R. 23–24). The ALJ further found that Plaintiff possessed the residual functional capacity ("RFC") to:

> perform light work . . . [with] occasional climbing of stairs or ramps, balancing, stooping, kneeling, crouching, and crawling . . . occasional pushing, pulling, and operation of foot controls with the left leg . . . precluded from climbing ladders, ropes, and scaffolds . . . avoid concentration exposure to extreme cold, fumes, odors, dust, gases, and poor ventilation . . . avoid working around heavy machinery, unprotected heights, and uneven terrain . . . can communicate over the telephone only occasionally . . . can only work in an environment with a moderate noise level.

(A.R. 24). In making this finding, the ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her impairments were not fully credible. (A.R. 24–26). Moreover, the ALJ rejected the findings of Plaintiff's treating physician, Dr. Febbis Balinos, who opined that Plaintiff could perform neither part-time nor full-time work. (A.R. 23).

On October 8 and November 26, 2014, the Appeals Council denied review of the

ALJ's decision. (A.R. 1–7). Plaintiff initiated the instant proceedings on December 29, 2014. (Dkt. No. 1).

### III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this court reviews the Administration's decisions to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citations omitted). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citation omitted). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Auckland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation marks omitted).

If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flatten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). However, even if substantial evidence exists in the record to support the Commissioner's decision, the decision must be reversed if the proper legal standard was not applied. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1014–15 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1279.

### IV.   PLAINTIFF'S CONTENTIONS

Plaintiff raises the following issues:

1. Whether the ALJ's RFC determination is supported by substantial evidence; and

4

2. Whether the ALJ erred in assessing Plaintiff's credibility.
(Joint Stip. at 4).

## V. DISCUSSION

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.

A. <u>The ALJ's RFC Determination Is Supported By Substantial Evidence</u>

Plaintiff's argument that the ALJ's RFC determination is unsupported by substantial evidence appears largely based upon her contention that the ALJ improperly rejected the opinion of her treating physician, Dr. Balinos. (Joint Stip. 6–8). As a result, the Court will analyze this claim under the corresponding standard.

1. Dr. Balinos' Opinion

On February 14, 2013, Dr. Balinos examined Plaintiff during a follow-up visit for ultrasound results and colitis treatment. (A.R. 501). Plaintiff reported that she had stomach pain that was a "six" on a scale from "one" to "ten," "ten" being the most painful. (*Id.*) Dr. Balinos further noted that Plaintiff was "doing well on current treatment." (A.R. 502). Dr. Balinos also stated that Plaintiff complained of "chronic intermittent mild abdominal symptoms and on and off diarrhea but denied blood in the stool." (*Id.*) On March 21, 2013, Dr. Balinos prepared a letter on Plaintiff's behalf. (A.R. 509). The letter stated that Plaintiff "has poor tolerance to physical activities with constant need for frequent bathroom access due to chronic diarrhea and her symptoms are severe enough to interfere with concentration and focus." (*Id.*) Dr. Balinos further opined that these limitations render Plaintiff "unable to do any part-time or fulltime competitive work." (*Id.*)

/ / /
/ / /

2. The ALJ's Rejection

In his written decision, the ALJ rejected Dr. Balinos' opinion that claimant cannot perform any part-time or full time work. (A.R. 23). The ALJ based this rejection on his findings that the opinion came in the form of a "brief, single page report that does not include any treatment records or any significant discussion of clinical findings." (*Id.*) The ALJ further noted that the letter was "not supported by the few treatment records from Dr. Balinos that are included in the record." (*Id.*) Lastly, the ALJ found that Dr. Balinos' opinion was "unsupported by the weight of the medical evidence." (*Id.*)

3. Analysis

Ordinarily, a treating physician's opinion is entitled to great weight. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527. "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). An ALJ may reject the contradicted opinion of a treating physician by "providing 'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, the opinion of Dr. Balinos was contradicted by the opinions of Drs. Eriks, Saeid, and Han, none of whom opined that Plaintiff was unable to perform any work. (A.R. 396, 274, 398–402). Accordingly the ALJ was required to provide "specific and legitimate reasons, supported by substantial evidence in the record," to justify his rejection of Dr. Balinos' opinion. *Lester*, 81 F.3d at 830 (internal quotation marks omitted).

i. *Brief, Conclusory, and Unsupported by Clinical Findings*

An ALJ may reject a treating physician's opinion that is "conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Here, the ALJ

accurately described Dr. Balinos' opinion as a "brief, single page report." (A.R. 23, 509). Moreover, aside from noting various diagnoses, Dr. Balinos' report did not point to any objective medical evidence supporting the conclusion that Plaintiff's symptoms are so severe as to preclude all work activities. Indeed, much of Dr. Balinos' opinion, including the frequency of Plaintiff's bathroom usage and the effect it has on her concentration, appear to be the reported by Plaintiff, rather than medically determined. As a result, the ALJ permissibly rejected Dr. Balinos' report because the record supports the ALJ's finding that Dr. Balinos' "brief, single page report . . . [did] not include any treatment records or any significant discussion of clinical findings." (A.R. 23).

Plaintiff presents two arguments, both unpersuasive, urging the Court to find that the ALJ impermissibly failed to inquire of Dr. Balinos about her conclusions. First, Plaintiff asserts that "if the ALJ had any concerns regarding this [report] or the limitations expressed, the ALJ should have recontacted Dr. Balinos for clarification." (Joint Stip. 7). However, ALJs are only required to conduct their own inquiries when the record contains "[a]mbiguous evidence, or . . . is inadequate to allow for proper evaluation of the evidence." *Tonapetyan*, 242 F.3d at 1150. Dr. Balinos' report was not ambiguous – it unequivocally stated her opinion that Plaintiff was unable to perform any work. (A.R. 509). The report was simply inconsistent with Dr. Balinos' own treatment records. (*Compare* A.R. 509 *with* A.R. 501–02). Nor does it appear that the record was "inadequate to allow for proper evaluation" of Dr. Balinos' report. The ALJ ostensibly obtained and reviewed all of Dr. Balinos' treatment records. Accordingly, the ALJ had no duty to further develop the record beyond what was before him. *See McLeod v. Astrue*, 640 F.3d 881, 884–85 (9th Cir. 2010) (finding no duty to conduct further inquiry where the ALJ rejected the opinions of treating physicians after reviewing "substantially all of their medical records throughout the time they treated [claimant]"); *cf. Roe v. Comm'r of Soc. Sec. Admin.*, 559 F. App'x 651, 652 (9th Cir. 2015) (finding that the proper course for the ALJ was to hold the record open until treating physician had opined on claimant's ability to work).

Second, Plaintiff argues that the ALJ was not permitted to find Dr. Balinos' report too brief or unsupported by evidence because he "got what he asked for," because he requested a "summary" from Plaintiff's treating phyiscians. (Joint Stip. 18). This argument fails because it was, in fact, Plaintiff who contacted Dr. Balinos to retrieve the letter. (A.R. 46). The ALJ explicitly left the record open so that Plaintiff could file "anything else" she wished to submit. (A.R. 55). As a result, Plaintiff and her attorney had every opportunity to shape their request to Dr. Balinos and to ask for any supplemental information they wished the ALJ to consider. Plaintiff's subsequent failure to ask Dr. Balinos to reconcile her opinion with her prior treatment notes or to include clinical findings with her summary cannot be construed as a fault of the ALJ.

        ii.    *Inconsistent with Dr. Balinos' Treatment Records*

"A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citation omitted). Here, as the ALJ pointed out, Dr. Balinos' limited treatment records state that Plaintiff was "doing well on current treatment." (A.R. 502). Additionally, Dr. Balinos described Plaintiff's symptoms as "mild" and "intermittent." (*Id.*) These findings are inconsistent with the March 21, 2013, letter in which Dr. Balinos describes Plaintiff's "constant need for frequent bathroom access." (A.R. 509). Moreover, Dr. Balinos' letter stated that Plaintiff suffers from bloody stools. (*Id.*) This is directly contradicted by her treatment reports, in which she notes that Plaintiff denied bloody stools. (A.R. 502). Accordingly, the inconsistencies between Dr. Balinos' treatment records and March 21 report were a permissible basis, supported by the record, for the ALJ to reject her opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012) (affirming rejection of treating physician's opinion that claimant could not work where the treating physician's treatment notes describes claimant's anxiety attacks only as "intermittent").

        iii.    *Unsupported by the Weight of the Medical Evidence*

ALJs may reject the opinions of treating physicians that are "inconsistent with the

medical records." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *accord De La Rosa v. Astrue*, 231 F. App'x 582, 583 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Ordinarily, the ALJ must specifically state which evidence he relied on to support a determination that the opinion of a treating physician is unsupported by the objective medical findings.  *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).  However, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion."  *Magallanes*, 881 F.2d at 755.

      Here, the ALJ summarized the medical record immediately preceding his rejection of Dr. Balinos' opinion and set forth the ways in which Dr. Balinos' letter was inconsistent with her own findings of "mild" or "intermittent" symptoms.  (A.R. 20–23).  Accordingly, the Court may infer that the ALJ rejected the letter because the weight of the medical evidence supported a finding that Plaintiff's symptoms were "mild," "intermittent," or otherwise non-disabling.  Therefore, the only issue that remains is whether the ALJ's rejection on this basis was supported by evidence in the record.  While it appears that Plaintiff's gastrointestinal issues may have been untreated for a period of time, multiple reports indicate that by late 2012 the condition was controlled by treatment.  (A.R. 454, 459, 461, 466–67, 502).  By that time, Plaintiff generally experienced fewer bouts of diarrhea, abdominal pain, and she no longer complained of blood in her stools.  (A.R. 502, 506).  These findings outweigh those that would ostensibly preclude all work, as Dr. Balinos found.[1]  (A.R. 240–41, 265–67, 288–90).  Because the record reasonably supports the ALJ's interpretation of the evidence, the Court concludes that the ALJ rationally and permissibly found that Dr. Balinos' opinion was unsupported by the objective medical evidence.

---

[1] Indeed, even the records that mention Plaintiff's ulcerative colitis corroborate neither Plaintiff's reported symptomology nor Dr. Balinos' limitations.  Therefore, the ALJ's finding that Dr. Balinos' report is unsupported by the weight of the objective medical findings rests upon substantial evidence.

B. The ALJ Properly Assessed Plaintiff's Credibility

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support their claimed severity. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an ALJ may reject a claimant's allegations upon: (1) finding affirmative evidence of malingering; or (2) providing clear and convincing reasons for so doing. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

1. ALJ's Decision

The ALJ found that "Plaintiff's testimony at the hearing was generally credible, but not to the extent that she alleged an inability to perform any work." (A.R. 24). In support of this decision, the ALJ cited the opinions of Dr. Linda Smith, a psychiatric consultative examiner, who opined that Plaintiff was not credible and exaggerated her symptoms. (A.R. 384–86, 388–90). The ALJ determined that this was evidence of malingering that "undercut" Plaintiff's credibility. (A.R. 26). Additionally, the ALJ asserted that Plaintiff's credibility was further damaged because she: (1) treated her migraine headaches with over-the-counter Excedrin and had not sought any further treatment for the pain caused by her migraines or any other impairment; (2) possessed a "poor work history;" (3) failed to seek out mental health care; (4) controlled her gastrointestinal impairments with medication; (5) participated in a "huge array" of daily activities; and (5) continued to search for employment. (*Id.*)

2. Analysis

    *i. Malingering*

Evidence of malingering is sufficient by itself to undermine a claimant's credibility. *See, e.g., Benton*, 331 F.3d at 1040; *Barrientez v. Colvin*, 517 F. App'x 602, 603 (9th Cir. 2013) (affirming ALJ's credibility determination where the ALJ found "some evidence of malingering"); *Gardner v. Barnhart*, 73 F. App'x 193, 195 (9th Cir. 2003). In this case, Dr. Linda Smith, a consultative psychiatric examiner, found that Plaintiff was not credible, exaggerated her symptoms, and did not suffer from a severe

mental disorder. (A.R. 395–98). Exaggerating the severity of an illness in order to avoid work is malingering. *See* Merriam-Webster's Collegiate Dictionary 703 (10th ed. 2001) (defining "malinger" as "to pretend incapacity (as illness) so as to avoid doing duty or work"). Accordingly, the ALJ's interpretation of Dr. Smith's findings is rational and, therefore, the Court may not disturb his reasoning that this evidence was deleterious to Plaintiff's credibility. *Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). However, since the amount of evidence required to discredit a claimant's testimony on this basis has not been decided by this circuit, the Court examines the remainder of the ALJ's credibility determination. *See Ghanim*, 763 F.3d at 1163 n.9 (affirmatively declining to discuss the standard of evidence required to find malingering).

    *ii.* *Conservative Treatment and Failure to Seek Treatment*

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (claimant's treatment of impairments solely with over-the-counter pain medications undermined her credibility). Likewise, an "unexplained . . . failure to seek treatment" is a permissible basis on which an ALJ may discredit a claimant's subjective symptom testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff stated that she treats her migraine headaches with over-the-counter medications. (A.R. 44, 271). Furthermore, the record lacks any indication that Plaintiff sought more than routine care for her foot and ankle pain, which she testified limit her ability to stand and walk. Likewise, the ALJ properly discerned that, despite various complaints of pain from these two impairments, Plaintiff never sought treatment for pain management. As a result, that Plaintiff treated her impairments conservatively, or not at all, serves as a clear and convincing reason to discredit Plaintiff's testimony.

    *iii.* *Poor Work History*

A finding that a claimant possesses a poor work history is a permissible reason to discount the claimant's credibility. *See Thomas*, 278 F.3d at 959 (affirming the ALJ's

11

adverse credibility determination where the claimant's work history was "spotty, at best"). Here, the ALJ's determination that Plaintiff had a poor work history is supported by substantial evidence in the record. Since 1988, Plaintiff has only been employed, in any capacity, for twelve years out of her twenty-year work history. (A.R. 178). Furthermore, Plaintiff's earning reports suggest that employment during much of this time was part-time or short term. (*Id.*) Accordingly, Plaintiff's work history ostensibly shows that Plaintiff "has shown little propensity to work in her lifetime," thus providing a clear and convincing reason to discredit Plaintiff's testimony.[2] *Thomas*, 278 F.3d at 959.

C.      The ALJ's Errors Were Harmless

"[H]armless error principles apply in the Social Security . . . context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's error is harmless only when it is "clear from the record that [the] ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins*, 466 F.3d at 885 (quoting *Stout*, 454 F.3d at 1055–56). Here, the ALJ improperly found that Plaintiff's admitted daily activities undermined her credibility. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (reiterating that daily activities undermine a claimant's credibility only when they are "inconsistent with [a claimant's] claimed limitations" (alterations in original) (internal quotation marks omitted)). Likewise, the ALJ's decision to discredit Plaintiff because of her lack of mental health treatment was also impermissible. *See Nguyen v. Chater*, 100 F.3d 1462,

---

[2] The ALJ also cited Plaintiff's search for employment as a reason to discount her credibility. (A.R. 26). Ordinarily, this would be a permissible reason to discredit Plaintiff's testimony. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir.2009). ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."). However, because the only references to Plaintiff's job search appear before the alleged onset of her ulcerative colitis, (A.R. 330), the Court declines to consider this factor in the ALJ's determination. To the extent that it was error, that error was harmless for the reasons stated, *supra*.

1465 (9th Cir. 1996) (holding that ALJs may not discredit claimants' testimony based on a failure to seek mental health treatment (citations omitted)). However, because the ALJ relied on other, permissible reasons to discredit Plaintiff's claims about the "persistence, intensity, and limiting effects" of her symptoms, these errors were harmless. *See Batson v. Comm'r of Soc. Sec. Admin*, 359 F3d 1190, 1197 (9th Cir. 2004) (affirming ALJ's credibility determination, despite error, because the ALJ gave multiple valid reasons to discredit claimant's testimony).

## VI.   CONCLUSION

The legally valid reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds. The Court therefore defers to the ALJ's credibility determination. *See Lasich v. Astrue*, 252 F. App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); *accord Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995). Furthermore, the Court finds that the ALJ's rejection of Dr. Balinos' medical opinion was based on substantial evidence and, therefore, "[the Court] may not substitute its judgment for that of the ALJ." *Batson*, 359 F.3d at 1196.

## ORDER

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 17, 2016

                                    /S/FREDERICK F. MUMM
                                    FREDERICK F. MUMM
                                  UNITED STATES MAGISTRATE JUDGE